## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

LYDON MCCANN-MCCALPINE,

    Plaintiff,

    v.

DETECTIVE FISHER OF BCPD, *et al.*,

    Defendants.

Civil Action No. BAH-23-2039

## MEMORANDUM OPINION

Plaintiff Lydon McCann-McCalpine, who is presently not incarcerated, has filed this civil action pursuant to 42 U.S.C. § 1983 alleging violations which occurred during his arrest and subsequent detention at Baltimore County Detention Center ("BCDC"). ECF 1. As Defendants, he names Detective Fisher of the Baltimore County Police Department ("BCPD"), BCPD's Internal Affairs Division, BCPD, Former Director of BCDC Gail Watts, BCDC Sergeant C. Carter, BCDC Officer Walo, and "Aramark (Mrs. Heard)," dietary supervisor at BCDC. *Id.* at 1–2.

Defendant Aramark moved to dismiss the complaint on October 16, 2023. ECF 10. Plaintiff was advised of his right to file an opposition response to Aramark's motion and of the consequences of failing to do so. ECF 11. Plaintiff filed an opposition, ECF 12, along with a motion for appointment of counsel, ECF 13, and a motion for default judgment, ECF 14. Aramark replied to Plaintiff's opposition, ECF 17, and Plaintiff subsequently filed an additional opposition response, ECF 18.

The remaining defendants, collectively the "Baltimore County Defendants," also filed a motion to dismiss on November 2, 2023. ECF 15. Again, Plaintiff was informed of his right to respond. ECF 16. He did so on November 10, 2023, ECF 19, and then provided supplemental

documentation, ECF 21, and an additional opposition, ECF 22. Finally, Plaintiff filed a document titled "Motion for Consideration to Rule on Pending Motions and Oppositions." ECF 20.

The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Aramark's motion to dismiss shall be granted. Baltimore County's motion to dismiss shall be granted in part and denied in part.

## I.    BACKGROUND

### A. Plaintiff's Allegations

Plaintiff alleges that his interactions with Defendant Detective Fisher began in 2020, when Fisher questioned Plaintiff as a witness to a homicide. ECF 1, at 2. He alleges that Fisher wanted him to "help" with a case he "knew nothing about." *Id.* He states that Fisher wanted him to say he gave the homicide suspect ("Fogg") his car on the night of the murder. *Id.* He maintains that Fisher indicated that if Plaintiff did not "help" in the investigation of Fogg, he would charge Plaintiff with murder and attempted murder. *Id.* He maintains that Fisher "was desperate to solve the high-profile case even if it meant [Plaintiff] testifying and lying on the stand about something he knew nothing about." *Id.* Plaintiff states this threat became a "promise made" in 2021 when Fisher arrested Plaintiff and made him a "suspect in the death of his sister's boyfriend." *Id.* at 2–3. He states that Fisher sought an arrest warrant and arrested him without probable cause. *Id.* at 3. Similarly, Plaintiff states that no forensic evidence tied him to the crime. *Id.* He states that Fisher sought a warrant without probable cause to check Plaintiff's phone, which Plaintiff maintains was intended to make him "pay for not cooperating as a witness in the 2020 case." *Id.*

2

Plaintiff was arrested and "locked up" on March 31, 2021, and was subsequently a "victim of torture and had a target put on his back by detective Fisher."[1]  *Id.*

While at BCDC, on April 25, 2021, Plaintiff was attacked by "5 BGF gang members" who stabbed him in the head, which required staples and hospitalization. *Id.* He states that Defendant Director Gail Watts "showed deliberate indifference by not turning the situation over to internal affairs [and] not calling the Police department." *Id.* Upon return from the hospital, he was placed on "another population tier with fresh staples in his head defenseless to suffer as much severe emotional stress as possible or even die." *Id.* He maintains it was unreasonable of Watts and BCDC to place him back in general population right away. *Id.* He notes that he was previously attacked by an inmate in the shower, on whom he "pressed charges." *Id.* He states that he "never missed a court date while locked up, but BCDC purposely ignored taking [him] for charges filed against the inmate who attacked" him. *Id.* Plaintiff states that the "pattern of inflicting as much pain on [him] as possible got worse as time went on" which is "exactly what Fisher conspired with the help of Baltimore County officers to keep [him] from fighting [his] case." *Id.* at 4.

Next, on August 6, 2022, Plaintiff alleges he found "a coated unknown large pill shape capsule" hidden in his dinner tray. *Id.* Plaintiff informed Defendants Walo and Carter about the unknown object found in his food. *Id.* Plaintiff wanted the Officers to acknowledge what they had seen on the tray, but instead, Carter took the tray to the kitchen to be examined by Defendant Mrs. Heard. *Id.* Carter then "fabricated" a "200 form" stating that Officer Walo opened the tray before giving it to Plaintiff. *Id.* The tray was taken to the kitchen, and Mrs. Heard, who works for

---

[1] In support of his contention that Detective Fisher sought warrants without probable cause, lacked evidence tying Plaintiff to the crime for which he was arrested, and acted in a retaliatory manner, Plaintiff includes copies of pro se motions to dismiss and to suppress evidence which he filed in the Circuit Court for Baltimore County. ECF 1-3.

Aramark, stated "it's possibly from staff wearing gloves when they prepare the food." *Id.* Plaintiff states that Mrs. Heard's "observation was a lie" and the comments on the 200 form were "fabricated with the intent to deceive investigating what drugs was on [his] tray." *Id.*

Plaintiff maintains that "Director Gail Watts, Sergeant C. Carter, Officer Walo [and] Aramark's staff Mrs. Heard reached a meeting of the minds by permitting, encouraging, facilitating & concealing their actions." *Id.* at 5. He states that Carter and Mrs. Heard lied about the substance found on the tray and that Carter persuaded Walo to say he opened the tray before giving it to Plaintiff. *Id.*; *see also* ECF 1-1 (documents related to Plaintiff's inmate complaint forms dated August 6 and August 29, 2022). He concludes that "all defendants' actions were enough to show that they conspired in serving me drugs on my food tray & trying to cover it up once I didn't eat the drugs." ECF 1, at 5. Further, he says Carter did not handle the situation properly because he should have called one of BCDC's K-9 units. *Id.* Plaintiff states that he notified Watts by email and through two separate 200 forms (inmate complaint forms) on August 6 and August 29, 2022, asking her to investigate "all people who took part in trying to kill [him] by poisoning." *Id.* As an exhibit to his complaint, Plaintiff includes copies of the inmate complaint forms filed in response to this incident. *See* ECF 1-1. The complaint forms largely restate the facts provided in his civil action complaint. There are comments from Sergeant Carter on the form which, presumably, contain the information Plaintiff contends is fabricated. *Id.* at 2. These comments state that there was a "white powdery substance" on top of Plaintiff's food, which Officer Walo "did not observe" when he opened the tray and handed it to Plaintiff. *Id.* Upon viewing the substance Mrs. Heard indicated that it was possibly from staff wearing gloves while preparing the food. *Id.* Sergeant Carter indicated that another tray was offered to Plaintiff, but it was refused. *Id.*

4

Next, Plaintiff alleges, generally, that there was a plan involving "many departments in Baltimore County" to "keep [him] from going to trial" in which "[a]ll defendants took part in playing their role." ECF 1, at 5–6. He states that he routinely had visits with his family cancelled when other inmates were permitted visitation. *Id.* at 6. He informed Watts, but she "did nothing to fix this situation because again it was all part of Fisher [and] the state's attorney plan of keeping [him] from taking [his] case to trial." *Id.* Plaintiff asked his mother to contact Baltimore County Internal Affairs so that the interrogation in which Detective Fisher threatened him could be preserved. *Id.* Internal Affairs never followed up or investigated his claims. *Id.* Further, Watts never presented his complaints that BCDC staff were attempting to kill him to Internal Affairs. *Id.*

Plaintiff states that both the Baltimore County State's Attorney and Detective Fisher knew how difficult his incarceration at BCDC had been, and thus requested additional postponements of his trial "knowing [he] wasn't physically or mentally capable of spending any more time fighting for [his] life in that jail." *Id.* He states that after the postponement "instead of giving [him his] fair trial or dismissal," they "used the corner they bullied [him] into" to convince him to plead guilty to manslaughter, with a sentence of time served. *Id.*

On July 16, 2023, Plaintiff contacted Baltimore County Internal Affairs to inquire about why no one had investigated his concerns. *Id.* He was told that Internal Affairs had no record of him or his family contacting them for assistance. *Id.* He states that this was "all lies" and part of a "cover up" for the misconduct of colleagues. *Id.* at 7. As an exhibit to his complaint, Plaintiff submits a print-out of the online Internal Affairs form, completed by his mother. *See* ECF 1-2.

Based on the foregoing, Plaintiff alleges that he suffers from physical and mental impairments which render him disabled and unable to work. ECF 1, at 7. He states that the

foregoing events violated his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment. *Id.* at 7–8. He seeks $122,500,000 in damages. *Id.* at 8.

### B. Aramark's Motion

Aramark filed a motion to dismiss arguing that Plaintiff has failed to sufficiently plead a claim against it pursuant to *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). ECF 10. More specifically, Aramark argues Plaintiff's complaint fails to mention any Aramark policy or custom which deprived Plaintiff of his constitutional rights. ECF 10-1, at 2–5. Further, Aramark states that "Plaintiff's sole complaint is that Mrs. Heard expressed an opinion on one occasion." *Id.* at 5. In Plaintiff's opposition, he argues that "Defendant ARAMARK upon information and belief has a custom policy of its employees' smuggling contraband in and out of Baltimore County Detention Center while rendering services to BCDC." ECF 12, at 1. He further argues that Aramark failed to handle food safely and failed to properly train and supervise its employees. *Id.* And, he states Aramark has "failed to implement any new policies or practices to identify or discipline employees who take part in illegal activities which ultimately ratified the unsafe and unconstitutional acts that transpire on a yearly basis in BCDC." *Id.*

In reply, Aramark argues again that Plaintiff has failed to plead sufficient facts which, even if accepted as true, would state a plausible claim. ECF 17. It states that "Plaintiff's claim that Aramark has a policy involving its employees smuggling contraband into the Detention Center is not plausible" and "that there is no claim of a causal link between the alleged policy and the allegation that some unknown person placed a pill in his food on one occasion." *Id.* at 2. Moreover, "Plaintiff's Opposition does not establish a link between the claim of inadequate training and supervision and the foreign substance in his food." *Id.* Finally, Aramark argues that Plaintiff's allegations "are no more than allegations of negligence." *Id.* Plaintiff responded further

6

in an unauthorized surreply, again arguing that Aramark's actions amount to deliberate indifference. ECF 18. He states that he "was subjected to cruel and unusual punishment when the food tray was poisoned with drugs and all defendants conspired to cover up obvious attempt of killing the plaintiff." *Id.* "To[] add to the deliberate indifference Aramark conspired by reaching a meeting of the minds when they took part in concealing, permitting, facilitating, [and] encouraging drugs on a tray when powder was never an ingredient included in the meal for that day." *Id.*

### C. Baltimore County Defendants' Motion

The Baltimore County Defendants, including Detective Fisher, Internal Affairs Baltimore County, Baltimore County Police Department, Director Gail Watts, Sergeant C. Carter, and Officer Walo, also filed a motion to dismiss Plaintiff's complaint. ECF 15. They argue first that Plaintiff has failed to plead sufficient facts to state a federal claim, and in the absence of a federal claim, this Court lacks jurisdiction. ECF 15-1, at 3. Additionally, they argue that Plaintiff has not exhausted his administrative remedies, that they are entitled to qualified immunity, and that Defendants Internal Affairs Baltimore County and Baltimore County Police Department are not legal entities capable of being sued. *Id.* at 4–7.

Plaintiff filed an opposition to the Baltimore County Defendants' motion. ECF 19. Therein, he argues that Defendants Internal Affairs Baltimore County and Baltimore County Police Department are subject to suit. *Id.* Further, he states that "[a]ll defendants showed complete disregard for the safety [and] well-being of plaintiff and conspired against plaintiff by depriving plaintiff of rights and violating dozens of constitutional rights." *Id.* Plaintiff raises a claim of conspiracy pursuant to 28 U.S.C. § 1985. He again maintains that Detective Fisher threatened him

during a 2020 criminal investigation and made good on that threat by arresting him in 2021 and conspiring with the other Defendants during Plaintiff's detention at BCDC. *Id.*

Plaintiff filed additional oppositions on March 27, 2024, ECF 22, and July 9, 2024, ECF 25,[2] which constitute unauthorized surreplies and thus will not be considered by the Court.[3]

## II.    STANDARD OF REVIEW

All defendants move to dismiss the complaint for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

In reviewing the motions, the Court accepts the well-pleaded allegations as true and in the light most favorable to Plaintiff. *See Twombly*, 550 U.S. at 555. "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S.

---

[2] The July 9 filing also appears to relate to a difference case Plaintiff has pending in this Court. *See* ECF 25-1, at 1 (containing Case No. 1:22-cv-02195).

[3] No party is entitled to file a surreply unless otherwise ordered by the Court. *See* Local Rule 105.2(a) (D. Md. 2023).  A surreply is permitted when the moving party would be unable to contest any matters raised by the opposing party in their reply for the first time. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). Here, Plaintiff is seeking to file a second opposition without leave of Court, and it will therefore not be considered further.  Additionally, the filing has the appearance of a new Complaint.  Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *See Zachair Ltd. V. Driggs*, 965 F. Supp. at 741, 748 (D. Md. 1997).

at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## III. DISCUSSION

Construing Plaintiff's complaint generously, he advances a claim that serving him a dinner tray with a pill-shaped object on it amounts to cruel and unusual punishment in violation of the Eighth Amendment. Additionally, he argues that Detective Fisher's actions amounted to false arrest and malicious prosecution. Next, he appears to argue that certain conditions of his confinement (i.e., cancellation of family visits, placement in general population) amounted to a deprivation of his constitutional rights. Finally, he appears to argue that a conspiracy existed between all defendants to deny him of his constitutional rights.

### A. Aramark (Mrs. Heard)

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable." Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988).

A private corporation, such as Aramark, however, even assuming it qualifies as a state actor, is liable under § 1983 *"only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original). Even assuming that Aramark "acted under the color of state law for the purposes of § 1983 by performing the traditional governmental function of providing food service at the Jail," *Coleman v. Aramark,* 31 F. App'x 808, 809 (4th Cir. 2002) (unpublished),[4] Plaintiff's complaint does not identify any specific Aramark policy or practice that caused the alleged constitutional violation. Plaintiff also fails to "allege[] a clear and consistent pattern of constitutionally-deficient food service of which Aramark had notice, and failed to act upon," as would be required in order for Aramark to incur § 1983 liability. *Williams v. Aramark Food Serv.,* Civ. No. 5:08–CT–3168–D, 2011 WL 4460440 at *3 (E.D.N.C. Sept. 26, 2011). Plaintiff's bald, unsupported allegation that "Defendant ARAMARK upon information and belief has a custom policy of its employees' smuggling contraband in and out of Baltimore County Detention Center while rendering services to BCDC," ECF 12, at 1, is unsupported by any factual predicate, and insufficient to salvage this claim. Moreover, to the extent Plaintiff might intend to hold Aramark

---

[4] Unpublished cases are cited for their persuasive reasoning, not as binding precedent.

liable under a theory of respondeat superior, the doctrine does not apply in § 1983 actions. *See Monell*, 436 U.S. at 690.

Finally, to the extent Plaintiff intended to hold "Mrs. Heard," the kitchen supervisor employed by Aramark, liable, her statement that the substance on Plaintiff's tray was "possibly from staff wearing gloves when they prepare the food," ECF 1, at 4, does not amount to a constitutional violation. Plaintiff has failed to plead sufficient facts to state a plausible claim against Mrs. Heard. Aramark's motion to dismiss, ECF 10, will therefore be granted, and the claims against "Aramark (Mrs. Heard)" are dismissed.

### B. BCPD and BCPD's Internal Affairs Division

The Baltimore County Defendants argue that both BCPD and BCPD's Internal Affairs Division "are both non sui juris (meaning that it does not have an independent legal existence outside of the County itself)" and, thus, are not amenable to suit. ECF 15-1, at 5. Defendants are correct. *See Strebeck v. Balt. Cnty. Police Dep't*, Civ. No. JFM-05-2580, 2005 WL 2897932, at *1 (D. Md. Oct. 17, 2005) ("Neither the Baltimore County Police Department nor the Baltimore County Council are *sui juris*. The Police Department is simply an agency of Baltimore County . . . ."); *see also Borkowski v. Balt. Cnty.*, 414 F. Supp. 3d 788, 804 (D. Md. 2019) ("[T]he Baltimore County Police Department . . . [is not] *sui juris*. The Police Department is simply an agency of Baltimore County[.]") (quoting *James v. Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755, 758 (D. Md. 2006)).

Recognizing that Plaintiff proceeds pro se, ordinarily, the Court would be inclined to substitute the proper party, Baltimore County, for these entities. However, even if the correct Defendant were substituted, Plaintiff has made no allegations that would render the County liable under 42 U.S.C. § 1983. As noted, "[t]he doctrine of respondeat superior does not apply in actions

11

under 42 U.S.C. § 1983." *Pearson v. Simms,* 345 F. Supp. 2d 515, 520 (D. Md. 2003). Rather, an official or supervisor can be liable under § 1983 only if he or she has, with knowledge or deliberate indifference, permitted an unconstitutional policy, custom, or practice to prevail. *Monell,* 436 U.S. at 691. Here, Plaintiff has pled no facts which might plausibly meet the *Monell* requirements. Thus, Defendants BCPD and BCPD Internal Affairs Division are dismissed from this action.

### C. Detective Fisher

Construing the complaint liberally, Plaintiff appears to advance a claim of false arrest and malicious prosecution by Detective Fisher. *See* ECF 1. The Baltimore County Defendants counter that Plaintiff does not "make any specific allegation of a violation of a constitutional right under federal law as it relates to Defendant Detective Fisher." ECF 15-1, at 3. The Court agrees that Detective Fisher should be dismissed.

The Court construes the complaint to include the assertion that Plaintiff's arrest violated the Fourth Amendment, as applied to states by the Fourteenth Amendment, because Plaintiff alleges it was effected without probable cause. With limited exceptions, an arrest is reasonable only if supported by probable cause. *Dunaway v. New York,* 442 U.S. 200, 214 (1979). An officer has probable cause for an arrest when "facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck,* 744 F.2d 360, 376 (4th Cir. 1984) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)). Probable cause requires more than mere suspicion, but less than proof beyond a reasonable doubt. *See Wong Sun v. United States,* 371 U.S. 471, 479 (1963). The arresting officer's belief need not be correct, or even more likely true than false, so long as it is reasonable. *Texas v. Brown,* 460 U.S. 730, 742 (1983). Furthermore, the officer's subjective

12

motivations for making the arrest are immaterial. *Wren v. United States*, 517 U.S. 806, 813 (1996).

Here, Plaintiff acknowledges that Detective Fisher arrested him based on a warrant. ECF 1, at 3. "[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant . . . . [A] claim for false arrest may be considered only when no arrest warrant has been obtained." *See Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). Thus, as to Plaintiff's claim of false arrest, this claim is dismissed.

To the extent that Plaintiff argues that the underlying actions of Detective Fisher leading to the issuance of the warrant were improper, his claim could be construed as one for malicious prosecution under the Fourth Amendment. *See Albright v.* Oliver, 510 U.S. 266, 271 (1994) (holding that the Fourth Amendment, not substantive due process, governs a claim that a plaintiff was subjected to criminal prosecution without probable cause). Although "it is not entirely clear whether [there is] a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (quoting *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009)); *see also Thompson v. Clark*, 596 U.S. 36, 42 (2022) (noting that a Fourth Amendment malicious prosecution claim is "sometimes referred to as a claim for unreasonable seizure pursuant to legal process" and that "[t]his Court's precedents recognize such a claim"). Thus, a "malicious prosecution" claim is "simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution." *Id.* (quoting *Snider*, 584 F.3d at 199). These elements include that "(1) the defendant seized [the plaintiff] pursuant to legal process but without probable cause and (2) the criminal proceedings terminated in the

13

plaintiff's favor." *Thurston v. Frye*, 99 F.4th 665, 673 (4th Cir. 2024) (citing *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014)).  Under Maryland law, a common law malicious prosecution claim requires a showing that "(1) the defendant instituted a criminal proceeding against the plaintiff; (2) the criminal proceeding was resolved in the plaintiff's favor; (3) the defendant did not have probable cause to institute the proceeding; and (4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice." *Okwa v. Harper*, 757 A.2d 118, 130 (Md. 2000).

Here, Plaintiff concedes in the complaint that he pled guilty to manslaughter. ECF 1, at 6. This dooms his malicious prosecution claim. *See Thompson*, 596 U.S. at 49 (holding that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence[,] only . . . that the criminal prosecution ended without a conviction").  Plaintiff's further allegation that he was "tortured & coerced into taking an Alford plea," ECF 1, at 7, does not solve Plaintiff's favorable-termination problem.[5]  In *Heck*, the Supreme Court held that to meet the favorable-termination prong after a plaintiff has been convicted and/or imprisoned in the underlying criminal proceeding,

> [A] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing

---

[5] The Court takes judicial notice that the state court docket confirms that Plaintiff entered an *Alford* plea. *See State of Maryland v. Lydon K. McCann-McCalpine*, Case No. C-03-CR-21-001433 (Cir. Ct. Balt. Cnty,) available at https://casesearch.courts.state.md.us/casesearch/inquiry (last visited July 2, 2024).  An *Alford* plea is not a favorable outcome that would permit him to meet the favorable-outcome element of his claim. *See Daulatzai v. Maryland*, 340 F.R.D. 99, 104 (D. Md. 2021) (explaining that "courts of appeals and courts in this district that have considered the question have squarely confirmed 'that a conviction based on an *Alford* plea can be used to impose *Heck*'s favorable termination rule" (quoting *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006)) (citing *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016); *Green v. Chvala*, 567 F. App'x 458, 459 (7th Cir. 2014); *Coster v. Maryland*, Civ. No. GLR-21-0065, 2021 WL 5605027, at *9 (D. Md. Nov. 30, 2021))).

that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87. "[T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. As Plaintiff has not demonstrated that the conviction or sentence has been invalidated in one of the ways enumerated in *Heck*, his malicious prosecution claim against Detective Fisher must be dismissed. Thus, as to this claim, the Baltimore County Defendants' motion to dismiss is granted.

### D. Defendants Carter and Walo

As to Defendants Carter and Walo, Plaintiff appears to advance a claim that these individuals attempted to harm him by planting an unknown substance in his dinner tray. The Court construes this as an allegation of cruel and unusual punishment. Defendants argue, sparsely, that "Plaintiff fails to state a constitutional violation under the Eighth and Fourteenth Amendments, alleging that these particular County Defendants were deliberately or wantonly indifferent to a substantial risk to Plaintiff's health or safety." Though the County's brief could benefit from more analysis, the Court agrees that Plaintiff has not stated a claim for cruel and unusual punishment against Defendants Carter and Walo.

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle,* 429 U.S. at 103. It also "embodies" the "concepts of dignity, civilized standards, humanity, and decency." *Id.* (citation omitted). Thus, the Eighth Amendment "protects

15

inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Because there is no suggestion in the complaint that any defendant utilized force of any kind, only an analysis of deliberate indifference is applicable here.

Importantly, Plaintiff was a pre-trial detainee at the time of this incident. This matters because "pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Short v. Hartman*, 87 F.4th 593, 604–05 (4th Cir. 2023). Indeed, "[t]he Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Id.* at 608–09 (citations omitted) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). "Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively unreasonable,'. . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly . . . it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Short*, 87 F.4th at 611

16

(citations omitted). However, "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12.

Even taking the facts in the complaint in the light most favorable to Plaintiff and recognizing the purely objective standard applicable to pretrial detainees, the Court finds that Plaintiff has not sufficiently stated a claim for cruel and unusual punishment against Defendants Walo and Carter. Plaintiff does not allege that he ingested or was ever encouraged (let alone forced) to ingest the white powder or pill-shaped item he alleges he found on his dinner tray. Indeed, he acknowledges that the officer removed his tray. ECF 1, at 4. He alleges that the proper course of action would have been to summon the K-9 unit and investigate the substance as he asked. *See id.* at 5. But failure to do so does not constitute deliberate indifference, even assuming that Plaintiff faced an excessive risk of harm regarding the substance and pill on his dinner tray.

Plaintiff's claim that Defendants Walo and Carter exhibited deliberate indifference to an excessive risk of harm will be dismissed.

### E.  Defendant Watts

Plaintiff's allegations about Defendant Watts are numerous and varied. He alleges that Watts showed deliberate indifference when she failed to contact the police and Internal Affairs following Plaintiff's stabbing, and similarly, that she was deliberately indifferent to his health and safety by placing him back on a general population tier following the stabbing. ECF 1, at 3. He further asserts that she was repeatedly informed about the incident with a pill in his food, but failed to investigate the matter further or to elevate the matter to internal affairs. *Id.* at 5. And finally, that Watts "did nothing to fix the situation" when Plaintiff was denied family visits. *Id.* at 6.

The Baltimore County Defendants do not address any of these allegations against Watts with any specificity in their motion to dismiss. Though the motion is sparse as to legal analysis in

17

generally, it is completely devoid of analysis or citation to specific allegations as to Watts.[6] As such, the claims will be permitted to proceed.[7]

### F. Conspiracy Claim

Plaintiff's complaint appears to advance a claim of conspiracy among all defendants. To establish a civil conspiracy under § 1983, a plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). An essential element for a claim of conspiracy to deprive plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006–07 (4th Cir. 1987). Without an agreement, the independent

---

[6] Nor can the Court liberally read the motion as to the "Baltimore County Department of Correction employee Defendants" as including Defendant Watts. That section of the motion concerns only the allegations involving the substance and item on Plaintiff's food tray. *See* ECF 15-1, at 3–4. Plaintiff does not allege that Defendant Watts was present for that occurrence, and the allegations against Watts extend beyond this immediate interaction.

[7] The Baltimore County Defendants' motion provides very little legal analysis. *See generally* ECF 15-1. Ultimately, it is the responsibility of the party raising an argument to formulate the argument, and the Court bears no responsibility to flesh out an unexplained argument on a party's behalf. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting it is "not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones"); *Clayton v. Nationwide Mut. Ins. Co.*, 260 F. Supp. 3d 514, 521 (D.S.C. 2017) ("The court has no obligation to fashion arguments for a party or to further develop a party's argument when it is wholly conclusory, unexplained, and unadorned with citation to legal authority."). As such, the Court will not consider their arguments regarding qualified immunity or exhaustion.

The Court notes, however, that the Baltimore County Defendants are incorrect in their exhaustion analysis. They argue that Plaintiff's complaint should be dismissed because he "does not allege that he exhausted administrative remedies" and thus his Complaint should be dismissed "as a matter of law." *Id.* at 5. This argument wholly lacks merit. Exhaustion is an affirmative defense to be pleaded and proven by *Defendants*, it does not impose a heightened pleading requirement on the prisoner. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). If the Baltimore County Defendants choose to renew this argument in any future dispositive motion, they must be mindful of the applicable law.

acts of two or more wrongdoers do not amount to a conspiracy. *See Murdaugh Volkswagen v. First Nat'l Bank*, 639 F.2d 1073, 1075–76 (4th Cir. 1981). "A conspiracy may . . . be 'inferred from the things actually done.'" *Id.* at 1075 (quoting *Overseas Motors, Inc. v. Imported Motors Ltd., Inc.*, 375 F. Supp 499, 532 (E.D. Mich. 1974)). However, circumstantial evidence consisting of "coincidence piled on coincidence" are insufficient where the "proof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law. *Murdaugh*, 639 F.2d at 1075.

Plaintiff does not provide any specific details regarding any potential conspiracy, often summarily concluding that "[a]ll defendants took part in playing their role" without supporting facts. ECF 1, at 6. Accordingly, this claim must be dismissed.

## IV.   MISCELLANEOUS MOTIONS

Three miscellaneous motions are pending at this time: Plaintiff's motion for appointment of counsel, ECF 13; Plaintiff's motion for default judgment, ECF 14; and Plaintiff's "Motion for Consideration to Rule on Pending Motions and Oppositions," ECF 20. The Court will address each in turn.

As to Plaintiff's motion to appoint counsel, a federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1),[8] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*,

---

[8]   Under § 1915(e)(1), a Court of the United States may request an attorney to represent any person unable to afford counsel.

19

739 F.2d 160, 163 (4th Cir. 1984) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989).

In his motion, Plaintiff states that he is indigent, the issues in the case are complex, he has limited knowledge of the law, and counsel would be better able to manage a trial in this matter. ECF 13. While this may be true, these reasons do not represent exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under § 1915(e)(1) at this time. The motion is denied without prejudice.

Next, Plaintiff moved for default judgment. ECF 14. Therein, he states that the defendants were served on "the 20th, 25th, 26th day of September 2023." *Id.*, *see also* ECF 9. Plaintiff filed his motion on October 19, 2023, less than 30 days after service occurred. ECF 14. Federal Rule of Civil Procedure 55(a) allows entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Default judgment is highly disfavored and reserved for those cases where an unresponsive party has halted the adversary process. *See Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Circ. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.").

Here, default was never entered by the Clerk, as the Defendants were not in default when Plaintiff's motion was filed. Further, counsel for all parties have appeared and responsive pleadings were filed. The Court thus denies the motion for default judgment. ECF 14.

Finally, Plaintiff filed a motion titled "Motion for Consideration to Rule on Pending Motions & Oppositions." ECF 20. In the motion, he states that "60+ days have passed since

plaintiff & defendants filed motions & oppositions" and there has "been no ruling from a Judge on this case in almost 90 days." *Id.* He therefore asks that the Court "review all pending motions & oppositions." *Id.* All pending motions in this matter are resolved herein, so the motion is denied as moot.

## V.  CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Defendant Aramark/Mrs. Heard (ECF 10) is granted, and Plaintiff's claims against this Defendant are dismissed with prejudice. The Baltimore County Defendants' motion to dismiss (ECF 15) is granted in part and denied in part. As to claims against Defendants BCPD, BCPD Internal Affairs, Defendants Fisher, Carter, and Walo, the motion is granted, and all claims against these defendants are dismissed with prejudice. As to Defendant Watts, the motion is denied. Only Plaintiff's claims against Defendant Watts outlined above in Section III.E will be permitted to proceed. The Order issued contemporaneously with this memorandum will detail a schedule controlling the progress of this case.

Plaintiff's motion for appointment of counsel, ECF 13, is denied. Plaintiff's motion for default judgment, ECF 14, is denied. Plaintiff's "Motion for Consideration to Rule on Pending Motions and Oppositions," ECF 20, is denied as moot.

A separate Order follows.

Date:  July 12, 2024                                          /s/
                                          Brendan A. Hurson
                                          United States District Judge