UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| LYDON MCCANN-MCCALPINE,<br><br>    Plaintiff,<br><br>    v.<br><br>DIRECTOR GAIL WATTS,<br><br>    Defendant. | Civil Action No. BAH-23-2039 |

## MEMORANDUM OPINION

Plaintiff Lydon McCann-McCalpine ("McCann-McCalpine" or "Plaintiff") filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging constitutional violations occurring during his arrest and subsequent detention at the Baltimore County Detention Center ("BCDC"). ECF 1. Director Gail Watts is the sole defendant remaining in this action. Pending is her motion for judgment on the pleadings. ECF 47. Plaintiff opposes the motion. *See* ECF 49 (response); ECF 61 (supplemental opposition). The Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Defendant Watts' motion for judgment on the pleadings will be **GRANTED**.

**I.   BACKGROUND**

The Court summarized Plaintiff's allegations and procedural developments in prior orders. *See* ECF 26, 45, 60. While the Court assumes familiarity with these prior orders, it will highlight relevant facts and procedural history here.

### A.    Procedural History

Plaintiff originally sued numerous individuals associated with the Baltimore County Police Department and BCDC and claimed that he was unfairly arrested and detained at BCDC. ECF 1, at 3. He alleges that while at BCDC, the defendants failed to protect him from an assault on April 25, 2021, and from additional abuses. *Id.* at 3–4.

Previously, all defendants filed motions to dismiss the complaint. *See* ECF 10 (Defendant Aramark); ECF 15 (all other defendants). On July 12, 2024, the Court granted the pending motions to dismiss in whole or in part, leaving only Plaintiff's claims against Watts. *See* ECF 26 (memorandum opinion); ECF 27 (order). The Court allowed claims against Watts to proceed because the Baltimore County Defendants' motion to dismiss failed to adequately address the allegations against her. ECF 26, at 17–18. On July 23, 2024, Plaintiff noted an appeal of the Court's July 12, 2024 memorandum opinion and order. ECF 28. The appeal was subsequently dismissed by the United States Court of Appeals for the Fourth Circuit for lack of jurisdiction. ECF 42. The mandate issued on January 2, 2025. ECF 43.

Defendant Watts answered the complaint and then filed a motion for judgment on the pleadings. ECF 39 (answer); ECF 47 (motion). In response to the motion, Plaintiff filed an "[o]pposition to defendant[']s summary judgement" (sic). ECF 49. The Court determined that Plaintiff had misconstrued the nature of Defendant's motion as one for summary judgment and thus provided him with an additional 21 days to file a supplement to his opposition, which he has now done. ECF 60 (order permitting the filing of a supplemental response); ECF 61 (supplemental opposition to motion for judgment on the pleadings).

B.  **McCann-McCalpine's Allegations**

The Court provides the following summary of Plaintiff's allegations in his complaint as set forth in the memorandum opinion issued on July 12, 2024:

> Plaintiff alleges that his interactions with Detective Fisher began in 2020, when Fisher questioned Plaintiff as a witness to a homicide. ECF 1, at 2. He alleges that Fisher wanted him to "help" with a case [Plaintiff] "knew nothing about." *Id.* He states that Fisher wanted him to say he gave the homicide suspect ("Fogg") his car on the night of the murder. *Id.* He maintains that Fisher indicated that if Plaintiff did not "help" in the investigation of Fogg, he would charge Plaintiff with murder and attempted murder. *Id.* He maintains that Fisher "was desperate to solve the high-profile case even if it meant [Plaintiff] testifying and lying on the stand about something he knew nothing about." *Id.* Plaintiff states this threat became a "promise made" in 2021 when Fisher arrested Plaintiff and made him a "suspect in the death of his sister's boyfriend." *Id.* at 2–3. He states that Fisher sought an arrest warrant and arrested him without probable cause. *Id.* at 3. Similarly, Plaintiff states that no forensic evidence tied him to the crime. *Id.* He states that Fisher sought a warrant without probable cause to check Plaintiff's phone, which Plaintiff maintains was intended to make him "pay for not cooperating as a witness in the 2020 case." *Id.* Plaintiff was arrested and "locked up" on March 31, 2021, and was subsequently a "victim of torture and had a target put on his back by detective Fisher."[1]  *Id.*
>
> While at BCDC, on April 25, 2021, Plaintiff was attacked by "5 BGF gang members" who stabbed him in the head, which required staples and hospitalization. *Id.* He states that Defendant Director Gail Watts "showed deliberate indifference by not turning the situation over to internal affairs [and] not calling the Police department." *Id.* Upon return from the hospital, he was placed on "another population tier with fresh staples in his head defenseless to suffer as much severe emotional stress as possible or even die." *Id.* He maintains it was unreasonable of Watts and BCDC to place him back in general population right away. *Id.* He notes that he was previously attacked by an inmate in the shower, on whom he "pressed charges." *Id.* He states that he "never missed a court date while locked up, but BCDC purposely ignored taking [him] for charges filed against the inmate who attacked" him. *Id.* Plaintiff states that the "pattern of inflicting as much pain on [him] as possible got worse as time went on" which is "exactly what Fisher conspired with the help of Baltimore County officers to keep [him] from fighting [his] case." *Id.* at 4.

---

[1] In support of his contention that Detective Fisher sought warrants without probable cause, lacked evidence tying Plaintiff to the crime for which he was arrested, and acted in a retaliatory manner, Plaintiff includes copies of pro se motions to dismiss and to suppress evidence which he filed in the Circuit Court for Baltimore County. ECF 1-3.

Next, on August 6, 2022, Plaintiff alleges he found "a coated unknown large pill shape capsule" hidden in his dinner tray. *Id.* Plaintiff informed Defendants Walo and Carter about the unknown object found in his food. *Id.* Plaintiff wanted the Officers to acknowledge what they had seen on the tray, but instead, Carter took the tray to the kitchen to be examined by Defendant Mrs. Heard. *Id.* Carter then "fabricated" a "200 form" stating that Officer Walo opened the tray before giving it to Plaintiff. *Id.* The tray was taken to the kitchen, and Mrs. Heard, who works for Aramark, stated "it's possibly from staff wearing gloves when they prepare the food." *Id.* Plaintiff states that Mrs. Heard's "observation was a lie" and the comments on the 200 form were "fabricated with the intent to deceive investigating what drugs was on [his] tray." *Id.*

Plaintiff maintains that "Director Gail Watts, Sergeant C. Carter, Officer Walo [and] Aramark's staff Mrs. Heard reached a meeting of the minds by permitting, encouraging, facilitating & concealing their actions." *Id.* at 5. He states that Carter and Mrs. Heard lied about the substance found on the tray and that Carter persuaded Walo to say he opened the tray before giving it to Plaintiff. *Id.*; *see also* ECF 1-1 (documents related to Plaintiff's inmate complaint forms dated August 6 and August 29, 2022). He concludes that "all defendants' actions were enough to show that they conspired in serving me drugs on my food tray & trying to cover it up once I didn't eat the drugs." ECF 1, at 5. Further, he says Carter did not handle the situation properly because he should have called one of BCDC's K-9 units. *Id.* Plaintiff states that he notified Watts by email and through two separate 200 forms (inmate complaint forms) on August 6 and August 29, 2022, asking her to investigate "all people who took part in trying to kill [him] by poisoning." *Id.* As an exhibit to his complaint, Plaintiff includes copies of the inmate complaint forms filed in response to this incident. *See* ECF 1-1. The complaint forms largely restate the facts provided in his civil action complaint. There are comments from Sergeant Carter on the form which, presumably, contain the information Plaintiff contends is fabricated. *Id.* at 2. These comments state that there was a "white powdery substance" on top of Plaintiff's food, which Officer Walo "did not observe" when he opened the tray and handed it to Plaintiff. *Id.* Upon viewing the substance Mrs. Heard indicated that it was possibly from staff wearing gloves while preparing the food. *Id.* Sergeant Carter indicated that another tray was offered to Plaintiff, but it was refused. *Id.*

Next, Plaintiff alleges, generally, that there was a plan involving "many departments in Baltimore County" to "keep [him] from going to trial" in which "[a]ll defendants took part in playing their role." ECF 1, at 5–6. He states that he routinely had visits with his family cancelled when other inmates were permitted visitation. *Id.* at 6. He informed Watts, but she "did nothing to fix this situation because again it was all part of Fisher [and] the state's attorney plan of keeping [him] from taking [his] case to trial." *Id.* Plaintiff asked his mother to contact Baltimore County Internal Affairs so that the interrogation in which Detective Fisher threatened him could be preserved. *Id.* Internal Affairs never followed up

4

or investigated his claims. *Id.* Further, Watts never presented his complaints that BCDC staff were attempting to kill him to Internal Affairs. *Id.*

Plaintiff states that both the Baltimore County State's Attorney and Detective Fisher knew how difficult his incarceration at BCDC had been, and thus requested additional postponements of his trial "knowing [he] wasn't physically or mentally capable of spending any more time fighting for [his] life in that jail." *Id.* He states that after the postponement "instead of giving [him his] fair trial or dismissal," they "used the corner they bullied [him] into" to convince him to plead guilty to manslaughter, with a sentence of time served. *Id.*

On July 16, 2023, Plaintiff contacted Baltimore County Internal Affairs to inquire about why no one had investigated his concerns. *Id.* He was told that Internal Affairs had no record of him or his family contacting them for assistance. *Id.* He states that this was "all lies" and part of a "cover up" for the misconduct of colleagues. *Id.* at 7. As an exhibit to his complaint, Plaintiff submits a print-out of the online Internal Affairs form completed by his mother. *See* ECF 1-2.

ECF 26, at 2–5.

### B. Defendant Watts' Motion for Judgment on the Pleadings

Defendant Watts moves for judgment on the pleadings alleging that Plaintiff has failed to state a claim against her. ECF 47-1, at 4. Watts argues that the complaint should be dismissed because Plaintiff fails to allege personal involvement or supervisory liability and further argues that she is entitled to qualified immunity. *Id.* at 5–10.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Bierman Fam. Farm, LLC v. United Farm Fam. Ins. Co.,* 265 F. Supp. 3d 633, 637 n.5 (D. Md. 2017). In assessing this motion, therefore, the Court will discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]' " *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.  DISCUSSION

The Court previously summarized Plaintiff's allegations against Defendant Watts as: 1) deliberate indifference for failure to contact the police and Internal Affairs following Plaintiff's stabbing; 2) deliberate indifference to Plaintiff's health and safety by placing him back on a general population tier following the stabbing; 3) failure to investigate matters or elevate the situation to internal affairs after being repeatedly informed about the incident with a pill in his food; and 4) doing "nothing to fix the situation" when Plaintiff was denied family visits. ECF 26, at 17 (citing ECF 1, at 3, 5–6).

The Court addresses Defendant Watts' assertion that Plaintiff fails to state a claim against her because she "never had any personal interaction" with Plaintiff and is not subject to supervisory liability. ECF 47-1, at 5–10. In his initial opposition response, Plaintiff asserts that Watts had a policy of "overlooking inmates' basic human needs" and "inadequately trained, supervised, and

disciplined her subordinates." ECF 49, at 1. In his supplemental response, Plaintiff asserts that judgment on the pleadings is improper because "Defendants" exhibited deliberate indifference after Plaintiff was stabbed multiple times, consciously disregarded a known substantial risk to Plaintiff's health and safety, and failed to keep Plaintiff secluded after his injury. ECF 61, at 1. Plaintiff also includes a copy of the discharge note from his hospital visit which states that he "[n]eeds to be secluded until Covid test comes back." *Id.* at 2. Finally, Plaintiff asserts that the Court erred in denying a motion for leave to file a physical exhibit that shows he spoke to a "cop" about Defendant "Gail Watts [and] defendants" for not following investigation rules and procedures. *Id.* at 1.

The Court construes Plaintiff's claim as an allegation of cruel and unusual punishment. The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const. amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016). Notably, it "proscribes more than physically barbarous punishments." *Estelle*, 429 U.S. at 103. It also "embodies" the "concepts of dignity, civilized standards, humanity, and decency." *Id.* at 102 (citation omitted). Thus, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

The Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane

7

conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Because there is no suggestion in the complaint that Watts (or any defendant) utilized force of any kind, analysis of deliberate indifference is all that is applicable here.

Plaintiff was a pretrial detainee when the events took place, thus his claims of deliberate indifference to excessive risk of harm fall under the Fourteenth Amendment instead of the Eighth Amendment, to the Constitution. *See* ECF 26, at 16–17. This matters because "pretrial detainees can state a claim under the Fourteenth Amendment, based on a purely objective standard, for prison officials' deliberate indifference to excessive risks of harm." *Short v. Hartman*, 87 F.4th 593, 604–05 (4th Cir. 2023). Indeed, "[t]he Fourteenth Amendment Due Process Clause protects pretrial detainees from 'governmental action' that is not 'rationally related to a legitimate nonpunitive governmental purpose' or that is 'excessive in relation to that purpose.'" *Id.* at 608–09 (citations omitted) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). "Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, 'objectively unreasonable,'. . . that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly . . . it is enough that the plaintiff show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 611 (citations omitted). However, "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611–12.

Additionally, in a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of

subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Here, taking Plaintiff's allegations in the complaint as true and drawing all reasonable inferences in his favor, Plaintiff has failed to allege Watts' personal participation in any alleged wrongdoing. Plaintiff does not allege that Watts had any knowledge, either actual or constructive, that the stabbing had taken place or that it was recommended that Plaintiff not be housed in general population following the stabbing. Plaintiff provides only conclusory statements that Watts somehow failed to act without alleging that Watts had the required knowledge to act in the first place. Watts cannot have acted with deliberate indifference without this requisite knowledge.[2]

Plaintiff has also not stated a claim against Watts related to the incident with the pill in his food. Accepting Plaintiff's allegation that Watts was notified after the fact that the incident took place does not change the outcome. ECF 1, at 5. The Court previously held that Plaintiff did not state a claim for cruel and unusual punishment against the two defendants, Walo and Carter, for either attempting to harm Plaintiff by placing an unknown substance in his dinner tray or for failing

---

[2] Further, although Plaintiff makes much of his being housed in general population and not in seclusion following his release from medical treatment, the recommendation that he be housed in seclusion was related, at least in part, to his Covid symptoms and not his injury. ECF 61, at 1. In either event, Plaintiff does not allege that Watts was aware of this medical recommendation.

9

to summon the K-9 unit to investigate the substance. *See* ECF 26, at 15. As with his claims against Walo and Carter, Plaintiff similarly fails to allege that Watts' inaction following the incident amounted to a violation of the law.

Finally, Plaintiff alleges that he notified Defendant Watts of the issues with his food and thereafter his family "visits were cancelled manually by [the] jail after [he] received confirmation." ECF 1, at 6. He further alleges that Watts "did nothing to fix the situation." *Id.* Plaintiff does not allege, however, that Watts herself took action to cancel his family visitation. Plaintiff seeks to hold Watts accountable solely based on his allegation that the "jail" manually cancelled visits. *Id.* This vague allegation is insufficient to state a claim against Watts.

Plaintiff also fails to adequately allege supervisory liability on the part of Defendant Watts. Plaintiff's allegations against all other defendants were dismissed for failure to state a claim. *See* ECF 26. Plaintiff has not adequately alleged that any of Watts' subordinates acted in a manner to violate his rights, or that Watts was aware of any such acts by subordinates. Further, Plaintiff does not allege any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability . . . only in those situations in which there is a history of widespread abuse"). As such, Plaintiff has failed to state a claim against Defendant Watts. In addition, the Court notes that Plaintiff's recent effort to amend his complaint against Watts was denied as futile. ECF 60, at 5.

Finally, the Court has considered Plaintiff's renewed effort to have the Court consider his request to file a physical exhibit. ECF 61, at 1. Plaintiff states that the exhibit shows he spoke to a "cop" about Defendant "Gail Watts [and] defendants" for allegedly not following "investigation rules and procedures." *Id.* For the same reasons discussed above, Plaintiff's generalized

allegations regarding a conversation with an unidentified "cop" fails to adequately allege Watts' personal involvement or invoke supervisory liability.

Plaintiff has not provided sufficient information to allow his claims against Defendant Watts to proceed.[3] The motion for judgment on the pleadings will be granted, and the case dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Watts' motion for judgment on the pleadings, ECF 47, is **GRANTED**.  A separate order follows.

Date:  February 24, 2026

/s/
Brendan A. Hurson
United States District Judge

---

[3] The Court declines to address Watts' qualified immunity argument, as the motion for judgment on the pleadings will be granted.